C. Max RUSSELL, Appellant,

v.

CITY OF ROGERS, Appellee.

No. 5-2971.

Supreme Court of Arkansas.

May 27, 1963.

---

Jeff Duty, Rogers, for appellant.

Scott & Davidson, by Bob Scott, Rogers, for appellee.

GEORGE ROSE SMITH, Justice.

This is an action by the City of Rogers to recover judgment for $8,674.00 under an oral contract by which the appellant Russell agreed to pay the city at the rate of $2.00 a foot for 4,337 feet of sewer line to be laid by the city in an undeveloped subdivision owned by Russell. Russell admits that the line was laid by the city. His defense is that he was induced by misrepresentation to enter into the contract. The circuit judge, considering the matter upon the pleadings and upon Russell's testimony in a deposition offered by the city, sustained the city's motion for a summary judgment in the full amount sued for.

Our recent summary judgment statute, Act 123 of 1961, is a re-enactment of Rule 56 of the Federal Rules of Civil Procedure. Ark.Stat.Ann. § 29–211 (Repl. 1962). It provides that a summary judgment shall be rendered if the pleadings and proof on file show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." It has been pointed out, under the Federal Rule, that the theory underlying a motion for summary judgment is the same as that underlying a motion for a directed verdict. Moore's Federal Practice (2d Ed.), § 56.02(10). Hence any testimony that is submitted with the motion must be viewed in the light most favorable to the party resisting the motion, with all doubts and inferences being resolved against the moving party.

When Russell's deposition is so considered we cannot say that the city was

entitled to judgment as a matter of law. Russell testified that the city had planned to lay the sewer line in his subdivision whether he agreed to it or not. He was told by the city's representatives that the cost would be $4.00 a foot and that the city would pay half the cost if he would agree to pay the other $2.00 a foot when the work was completed. If he did not accept that arrangement then he would be required to pay $4.00 a foot for that part of the line apportionable to each lot as the various lots were connected to the sewer mains. Russell said that he was told that all the property owners were being offered this same choice.

Russell testified that he accepted the first alternative in order to save $2.00 a foot. Before he paid for the completed work, however, he found that he was being discriminated against in that the city was offering to permit other property owners to hook onto the sewer line at any time in the future at a charge of only $2.00 a foot. After discovering this discrimination Russell refused to make the lump-sum payment that he had agreed to make when the work was completed.

The city argues that even if the misrepresentations were made—and at this stage of the case we must assume they were—they were not material and related only to future matters rather than to existing facts.

■ Neither point is well taken. A misrepresentation is considered to be material if it would be likely to influence a reasonable person in deciding whether to enter into the proposed contract. Rest., Contracts, § 470; Williston on Contracts (Rev.Ed.), § 1490. Russell would undoubtedly have been influenced by the statement that all the property owners were being offered the same choice. If he had known the true facts there was no reason whatever for him to agree to make a cash payment of $8,674.00 as soon as the line was laid, for he could have obtained exactly the same benefits by paying, during a period of years, small installments that could not total more than the amount of the lump-sum charge and would in all probability have been less than that charge.

It is equally clear that the misrepresentation was not merely an expression of opinion about what might happen in the future. It amounted to a positive statement of the method by which the city intended to finance the entire project. Hence the representation pertained to an existing state of fact upon which Russell was entitled to rely in reaching his decision about the proposed contract.

■ The appellant closes his brief by asking that the judgment be reversed and that a judgment be entered in his favor. It is quite apparent, however, that there are a number of disputed issues of fact in the case. Consequently, just as in cases where a verdict has been erroneously directed in the court below, the cause will be remanded for a trial on the merits.

Reversed.