Vera McENTIRE *v.* Estate of J. L. McENTIRE, Deceased, James C. McENTIRE, Executor, and PINE BLUFF NATIONAL BANK

79-47                                           590 S.W. 2d 241

Opinion delivered November 19, 1979

[Rehearing denied January 7, 1980.]

*C. Mac Norton, Brockman & Brockman*, for appellant.

*Jones & Petty*, for appellees.

Otis H. Turner, Special Chief Justice. Prior to De-

cember 18th, 1975, J. L. McEntire maintained a checking account in Pine Bluff National Bank in his individual name with sole authority in the owner to withdraw funds from the account. On December 18, 1975, a new signature card for the account was executed by McEntire and his wife, Vera E. McEntire, permitting either to withdraw funds from the account but retaining the account in the sole name of J. L. McEntire. Thereafter, both Mr. and Mrs. Entire did, on occasion, withdraw funds from the account on their individual signature. On January 6, 1977, J. L. McEntire caused a new signature card to be issued in his sole name withdrawing the authority of Mrs. McEntire to draw funds from the account.

Both signature cards contained the following identical language:

"You are authorized to recognize either of the signatures subscribed below in the payment of funds or the transaction of any business for this account. . ."

"The below — signed, joint depositors, hereby agree each with the other and with you that all sums now on deposit or herebefore or herafter deposited by either or both of said joint depositors with you to their credit as such joint depositors with all accumulations thereon are and shall be owned by them jointly, with right of survivorship, and be subject to the check or receipt of either of them or the survivor of them and payment to or on the check of either or the survivor shall be valid and discharge you from liability."

"Each of the below — signed appoints the other attorney, with power to deposit in said account monies of the other and for that purpose to endorse any check, draft, note or other instrument payable to the order of the other or both said joint depositors."

\* \* \*

"Your rights or authority under this agreement shall not be changed or terminated by us or either of us except by

written notice to you which shall not affect transactions therebefore made.''

J. L. McEntire died subsequent to January 6, 1977. Vera McEntire brought this action against the Estate of her deceased husband and Pine Bluff National Bank to recover the funds on deposit in the account. Thereafter, both parties moved for summary judgment which was granted in favor of the estate and the Bank. From that Judgment, this appeal is taken.

For reversal, Appellant raises two broad issues. First, that appellant, rather than appellee, was entitled to summary judgment; and second, that the Motion for Summary Judgment should not have been granted because there exist genuine issues of material fact.

Under point one, appellant urges that she is entitled to Summary Judgment because a tenancy by the entireties was created in the bank account on December 18, 1975, which could not be destroyed by the unilateral act of J. L. McEntire in removing the cotenant's name from the account. Appellant further urges under point one that the Bank is estopped to deny appellant's absolute right to the balance in the account because checks executed by appellant and drawn on the account were honored by the bank subsequent to January 6, 1977.

Under point two, appellant makes no attempt to state what issues of material fact exist. However, the Complaint alleges (1) that a gift was made; (2) estoppel by the Bank and, (3) the creation of a tenancy by the entireties in the account.

We will first consider appellant's point two in that under the state of the record before us, we find that no genuine issue of material fact exists which would justify a reversal.

In order to establish a completed inter vivos gift, there must be clear and convincing evidence that there was an actual delivery of the subject matter of the gift with a clear intent to make an immediate, present and final gift beyond recall, accompanied with an unconditional release of all fu-

ture dominion and control by the donor over the property delivered. *Porterfield* v. *Porterfield*, 253 Ark. 1073, 491 SW 2nd 48; *Coristo* v. *Twin City Bank*, 267 Ark. 554, 520 SW 2nd 218.

The affidavits produced by appellant leave no issue of fact relating to inter vivos gift and the establishment of the account did not constitute a gift, as a matter of law.

The assertion that Pine Bluff National Bank is estopped by its conduct in honoring checks drawn against the account after January 6, 1977, is without merit. The uncontroverted facts in the record before us are that at the time the bank honored the checks, the authority of Mrs. McEntire to draw funds from the account had already been terminated.

Equitable estoppel is available only to one who has in good faith relied upon the conduct of another and has been led thereby to a change of position for the worse, acted to his injury, or gave up or abandoned a legal right upon the representations or conduct constituting the estoppel. *Geren* v. *Caldarrera*, 99 Ark. 260, 138 SW 335; *Deal* v. *Deal*, 220 Ark. 134, 246 SW 2nd 429; *Thompson* v. *Wilhite*, 131 Ark. 77, 198 SW 271.

Applying the facts of this case to the estoppel rule, it is immediately apparent that the appellant neither alleged or in fact changed her legal position or status because the checks were honored; she has not acted to her injury; and lastly, she gave up no legal right as a result thereof. Whether the checks drawn against the account after January 6, 1977 were paid or dishonored does not alter the legal status of the parties, the nature of the account at any given time, or the legal rights of Mr. or Mrs. McEntire relating to the account. What was done with regard to the account was done within the bounds of the laws of this State and was done *prior* to the acts alleged to constitute an estoppel.

The Bank was acting within its authority in permitting the removal of appellant as one authorized to draw funds from the account. The involved account was held in such a manner that J. L. McEntire (or Mrs. McEntire) could with-

draw or receive payments or withdraw *all* funds therefrom, and any such payments made by the banking institution would be a complete discharge as to the amount paid. *Ark. Stats. Annotated,* § 67-552(h). In addition, the Bank was under no legal duty to notify appellant that she could no longer withdraw funds from the account and no legal right of appellant was impaired or destroyed by the unauthorized payment of checks drawn on the account by appellant subsequent to January 6, 1977.

Appellant implies that a withdrawal of authority, or change of authority to draw upon the account should be distinguished from a withdrawal of the funds and establishment of a new account. We have previously established that there is no such valid distinction and it was thus unnecessary for Mr. McEntire to withdraw the funds and establish a new account as opposed to the course he followed in this instance. To require such would have been superfluous and equity regards substance rather than form. *Davis* v. *Jackson* 232 Ark. 953, 341 SW 2nd 726.

The remaining question under appellant's point two relates to the estate created between this husband and wife upon execution of the account signature card on December 18, 1975. The account, as it existed subsequent to December 18, 1975 and prior to January 6, 1977, was a tenancy by the entireties. Having previously disposed of the inter vivos gift and the estoppel arguments, this leaves only the question of the rights of the parties under a tenancy by the entireties in a bank account — those rights being the subject of established law.

There being no genuine issue of material fact remaining, summary judgment was a proper remedy in this case.

Turning then to appellant's point One urging that appellant, rather than appellee, should have been granted summary judgment on her motion, we consider the rights of tenants by the entireties in a bank account as those rights are governed by our established law and the facts in this case.

As early as 1921, this Court recognized that an estate by

the entireties may be created in personal property. *Union and Mercantile Trust Company* v. *Hudson,* 147 Ark. 7, 227 SW 1. That holding has been consistently reaffirmed through the years, *Black* v. *Black,* 199 Ark. 609, 135 SW 2nd 837, and is now so well recognized that extensive citations are unnecessary.

In 1965, the General Assembly (Act 78 of 1965) established that bank accounts held in the names of persons who designate themselves as husband and wife shall be the property of such persons as tenants by the entireties and upon the death of one of the persons the account shall be payable to the survivor. The statute further provides that the banking institution shall pay withdrawal requests and otherwise deal in any manner with the account upon the direction of any one of the persons named therein. *Ark. Stats. Annotated,* Section 67-552. This was the Statute in existence at the time of creation of the account in question.

In *Black,* supra, we held that the Statute was passed for the protection of the bank in which the deposit was made. Though the Statute existing at the time of the *Black* decision was subsequently amended, we hold that the amendments do not change the character thereof and the statute continues to exist for the same primary purpose.

An estate by the entireties in a bank account differs in one significant aspect from an estate in real property in that the estate exists in the account only until one of the tenants withdraws such funds or dies leaving a balance in the account. Funds withdrawn or otherwise diverted from the account by one of the tenants and reduced to that tenant's separate possession ceases to be a part of the estate by the entireties. *Black* v. *Black,* supra; *McGuire* v. *Benton State Bank,* 232 Ark. 1011, 342 S.W. 2d 77. This does not mean that in a proper case under timely allegations of fraud or other such remedy, that one of the co-tenants could not sustain an action to recover all or a part of the funds diverted or withdrawn by the other. No such allegation or proof exists in this case.

The decree of the Chancellor is in all things affirmed.

Special Justice Douglas Smith joins in the opinion.

Harris, C.J., and Byrd, J., not participating.

Fogleman and Hickman, JJ., dissent.

John A. Fogleman, Justice, concurring in part; dissenting in part. Although I agree that summary judgment in favor of the bank was proper, I cannot agree that the estate of J. L. McEntire was entitled to a summary judgment in this case. Perhaps the basis for my disagreement is the majority's treatment of the basic document upon which appellant relies as a signature card. It may be, even though it is not so labelled, but it is much more than that. It is an agreement between J. L. McEntire and his wife, Vera E., both of whom signed the document. The fact that it is an agreement between them is obvious from reading the second paragraph of the quotation in the majority opinion. I simply do not see how anyone could argue that, at least on the face of the agreement, a tenancy by the entirety was not created. This is not a case where the agreement was ''in fine print'' or where it was on the back of a signature card. It was above the signatures of the parties.

In considering the question whether a tenancy by the entirety existed, it must be remembered that the four unities once required for a joint tenancy are no longer required for a tenancy by the entirety in that a vesting of title at the same time is no longer required when one of the spouses executes an instrument conveying or transferring an interest to himself and his spouse. *Ebrite* v. *Brookhyser,* 219 Ark. 676, 244 S.W. 2d 625; *Harmon* v. *Thompson,* 223 Ark. 10, 263 S.W. 2d 903. We have indicated that this holding would be equally applicable where personal property is involved. *Miller* v. *Riegler,* 243 Ark. 251, 419 S.W. 2d 599. In speaking of *Ebrite* v. *Miller,* we said:

> This decision certainly has not been viewed as unsound for there can be no logic in preventing a spouse from directly giving to his or her marriage partner equal rights in property that is owned, when the same result was permitted by creating the estate through a third party who really held no interest in the property at all.

Consequently, decisions based upon the obsolete premise of unity of time are no longer controlling or even persuasive.

Furthermore, it has long been recognized that a husband may, by simply changing a bank account from his own name to that of him and his wife, create an estate by the entirety. *Black* v. *Black*, 199 Ark. 609, 135 S.W. 2d 837. It has been said that the creation of a "husband and wife" joint account is not a true common law tenancy by the entirety because either party may extinguish the joint estate while both are living as to any part of the money withdrawn from the account and reduced to separate possession. Those holdings are applied where the tenancy is dependent upon the mere establishment of the account in two names or upon statutes. See *Mc Guire* v. *Benton State Bank,* 231 Ark. 608, 331 S.W. 2d 258, 232 Ark. 1008, 342 S.W. 2d 77. There is no indication whatever that there was any agreement in *Mc Guire* of the nature of the one involved here.

It must be remembered that appellant's reliance is not placed upon any statute for an investiture of title in her, so cases based upon statutes have neither controlling nor persuasive effect. *Davis* v. *Jackson,* 232 Ark. 953, 341 S.W. 2d 762, relied upon by the majority, is such a case, as is *Coristo* v. *Twin City Bank,* 257 Ark. 554, 520 S.W. 2d 218. It also must be kept in mind that the relationship of husband and wife did exist in the present case, so cases involving parties standing in other relationships, such as *Davis* v. *Jackson,* supra, should carry little weight.

It also must be remembered that this is not a case where the husband was attempting merely to have the account pass to his wife upon his death. Instead, the agreement was that the account be presently owned by the husband and wife jointly, with the right of survivorship. Under the agreement appellant could have withdrawn every cent in the account. There is nothing in the document appellant relies upon to indicate that the arrangement was simply testamentary. Cases in which the attempt was made to merely cause the balance of the account to pass to the surviving spouse on death of the other have no bearing.

It seems clear to me that the widow had the right to

litigate the question of ownership of the funds. In *Union & Mercantile Trust Co.* v. *Hudson,* 147 Ark. 7, 227 S.W. 1, the funds in question were the proceeds of a loan on lands held by a husband and wife as tenants by the entirety. The husband deposited them in his own account rather than in the joint names of the parties. The court said that, in equity, the matter was to be considered as if he had deposited the funds jointly and, because the funds had not been reduced to the husband's separate possession, with the wife's *knowledge and consent,* they were the property of the husband and wife as an estate by the entirety. In this case, under the agreement, the funds were considered as deposited jointly. In *Dickson* v. *Jonesboro Trust Co.,* 154 Ark. 155, 242 S.W. 57, the court held that a tenancy by the entirety in funds withdrawn from a joint bank account by a husband and reduced to this separate possession with the *knowledge and consent* of the wife had been destroyed. In *Dickson,* every cent put into the account belonged to the husband and the wife had never drawn any checks on the account. Still both *knowledge and consent* of the wife were required to validate the husband's destruction of the tenancy by the entirety. Consent is contained in the agreement between the parties here, but there is absolutely nothing to indicate that appellant had any knowledge of Mr. McEntire's reduction of the entire account to his separate possession.

On the executor's motion for summary judgment, it was incumbent upon him to show that there were reasons why the agreement should not be binding. There is no showing that Mr. McEntire did not read and understand the language of the agreement. There is no showing that he did not instruct the employees of the bank in a manner that would indicate an intent contrary to the one carried out. There is nothing to indicate an intent contrary to the one stated in the agreement. See *Park* v. *McClemens,* 231 Ark. 983, 334 S.W. 2d 709. Even though the burden might be different on trial of the case, it certainly was the executor's burden to show such things on motion for summary judgment. The burden is on the movant for a summary judgment to show that there are no material issues of fact. *Pioneer Finance Co.* v. *Lane,* 255 Ark. 811, 502 S.W. 2d 624; *Harvey* v. *Shaver,* 247 Ark. 92, 444 S.W. 2d 256.

The treatment of the question of gift in this case totally disregards the relationship of husband and wife and the authorities cited have no bearing on the question for the reason that neither involved such a relationship. The decision in *Ramsey* v. *Ramsey,* 259 Ark. 16, 531 S.W. 2d is controlling. There we said that where the husband is responsible for property being taken in both names, the fact that the consideration given belonged to the husband only is of little, if any, significance. The reason is that the presumption is that there was a gift of an interest by the husband to the wife, even though the wife may have no knowledge of the transaction. As to that presumption we said:

> The presumption is strong, and it can be overcome only by clear, positive, unequivocal, unmistakable, strong, and convincing evidence, partially because the alternative is a resulting trust the establishment of which, under such circumstances, requires that degree of proof.

The property involved in *Ramsey* was promissory notes. We further said that delivery to the husband is considered as delivery to the husband and wife sufficient to make the gift complete. As I see it, the question of gift relates only to the creation of a tenancy by the entirety. There was a completed gift to appellant of her title as a tenant by the entirety, which has not been shown to have been destroyed by the husband with her knowledge.

We have recently recognized the right of parties to a joint account to litigate the ownership of money which a bank permitted to be withdrawn from a joint account by one co-tenant without the knowledge of the other tenant. *Haseman* v. *Union Bank of Mena,* 262 Ark. 803, 562 S.W. 2d 45. We should at least do the same here by reversing the judgment in favor of the McEntire estate.

I am authorized to state that Mr. Justice Hickman joins in this opinion.