Willie ROBINSON *v.* REBSAMEN FORD, Inc.

75-162                                    530 S.W. 2d 660

Opinion delivered December 8, 1975

*Griffin J. Stockley,* for appellant.

*Moses, McClellan, Arnold, Owen & McDermott,* by: *William L. Owen,* for appellee.

JOHN A. FOGLEMAN, Justice. After having repossessed and sold an automobile Robinson had purchased from it on an installment sales contract, Rebsamen Ford, Inc., sued Willie Robinson to recover a deficiency judgment of $901.18. Robinson pleaded usury as an affirmative defense. He alleged that Rebsamen Ford had procured credit life insurance for him for a premium of $36.76, without disclosing to him that comparable insurance could have been purchased at a much cheaper price under Ford Life Insurance Group Policy No. 2200 and that he would have selected this policy if given an opportunity to do so. He also alleged that Rebsamen Ford was paid 35% of the premium charged to him on the insurance procured but no commission would have been paid to it on the Ford Life Insurance group policy. He alleged that the compensation derived by Rebsamen Ford, when added to the interest otherwise charged, produced a rate of return to Rebsamen Ford of more than 10% per annum and made the contract void for usury. This appeal comes from a summary judgment granted on the motion of Rebsamen Ford. Since we agree with Robinson that there was a material fact issue, we reverse.

Most of the critical facts were admitted. Rebsamen Ford could have procured coverage for Robinson under Ford Life Insurance Group Policy No. 2200 at a cost of 44 cents per $100 of credit per annum, while the insurance obtained came at a premium of 75 cents per $100 of credit per annum, or $36.76, from which Rebsamen Ford was paid a commission

of $12.87. Of this commission, $6.56 was refunded by Rebsamen Ford when Robinson defaulted on the installment sales contract.

Appellee's motion for summary judgment relied upon admissions as to the debt, default, repossession, sale of the automobile after repossession and failure to pay the deficiency. The only effort to negate the allegations and admissions upon which Robinson relied for his affirmative defense was the citation of *Poole* v. *Bates-Pearson Auto Sales*, 257 Ark. 764, 520 S.W. 2d 273, as controlling authority. Rebsamen Ford did, however, as a means of invoking stare decisis, attach to its motion the pleadings and judgment in three other cases in the Circuit Court of Pulaski County in which that court had held adversely to other debtor-purchasers raising the same factual issue. We do not further consider this phase of the motion since it is not applicable in this court, even though it may have been insofar as the trial court was concerned.

In his response to the motion for summary judgment, Robinson incorporated the affidavit of Keith Sloan, the life and health actuary of the Arkansas Insurance Department, who stated that his duties included approval of forms and rates and processing of statistics relating to credit life insurance. He deposed that benefits identical to those obtained by Robinson in the policy issued were offered at a cheaper price by eight insurance companies. He also stated that the principal difference in the cost of the policy Robinson was issued and Ford Life Group Policy No. 2200 was attributable to the compensation allowed to the agent and that the differences in eligibility for coverage and risks covered by the two policies were considered minor by the industry and the Insurance Department.

Robinson's own affidavit was to the effect that he was not informed by Rebsamen Ford that he could have obtained a less expensive policy which provided the same benefits as the one by which he was covered. Otherwise, Robinson voluntarily elected to take the insurance issued. It was admitted that several of appellee's employees, including members of its sales and clerical staffs possessed some information concerning costs and benefits of credit life insurance.

The installment sales contract recites that the finance charge, calculated on the unpaid portion of the purchase price and the insurance issued, was calculated on the basis of 10% per annum.

Appellee's and the circuit court's reliance upon *Poole* v. *Bates-Pearson Auto Sales*, 257 Ark. 764, 520 S.W. 2d 273, is misplaced because of the difference in the factual situations. There we held that an automobile sales contract was not rendered usurious by the mere fact that the automobile dealer received compensation from the insurance carrier for issuance of credit life insurance voluntarily taken by its purchaser, where there was no contention that the insurance charge was excessive. We carefully pointed out in *Poole* that there was no difference in purchasing the insurance from the dealer and in purchasing it from some other company in that there was no showing that the premium would have been less if purchased elsewhere. We emphasized that in such a situation no unlawful profit was involved.

In *Ragge* v. *Bryan*, 249 Ark. 164, 458 S.W. 2d 403, we held that a charge for credit life insurance did not render a loan contract usurious in the absence of evidence that the lender would profit from the escrow account into which the amount charged the borrower was credited or that the lender intended to apply the funds improperly to its own profit. We also emphasized the fact that the lender had met the burden of explaining "hidden items" in detail by showng that it paid the premiums on the insurance on the borrower and received no kickback or commission.

The affidavits of Sloan and Robinson are clearly sufficient to show the existence of a material issue of fact. They are not controverted and must be taken as true. *Purser* v. *Corpus Christi State National Bank*, 258 Ark. 54, 522 S.W. 2d 187. If, indeed, Robinson was not informed by Rebsamen Ford that he was eligible for and could elect a cheaper policy affording substantially the same benefits as that he took, the fact that the seller of the automobile also received a commission as an insurance agent on the policy taken but would not have received anything for obtaining the cheaper policy and the difference in cost was largely attributable to the commission

to the seller would constitute substantial evidence from which the fact finder might find that the collateral transaction was a cloak for usury. We have recognized ever since our decision in *Matthews* v. *Georgia State Savings Assn.*, 132 Ark. 219, 200 S.W. 130, 21 ALR 789, that an insurance agreement can be a cloak or device for the evasion of the usury laws. Our result in this case is influenced to some degree but not controlled by the public policy statements contained in Ark. Stat. Ann. § 66-3029 (Supp. 1973). Under that section, it is declared that it is the public policy of the state that life insurance agents and solicitors are charged with the responsibility of exercising discretion and good faith in a sales presentation or transaction.

Since we find that the facts would be sufficient basis for a jury to conclude that the insurance transaction in this case was a cloak for usury, and all reasonable inferences must be drawn against the moving party, a summary judgment was not proper because reasonable minds might differ as to the conclusions to be drawn from the facts disclosed. *Harvey* v. *Shaver*, 247 Ark. 92 444 S.W. 2d 256. In order to be entitled to summary judgment, it was incumbent upon appellee to show that there was no issue of fact. *Deltic Farm & Timber Co.* v. *Manning*, 239 Ark. 264, 389 S.W. 2d 435. Its explanation of the transaction by the affidavits filed is not sufficient to meet that burden. Summary judgment is an extreme remedy which should be granted only when it is clear that there is no issue of fact to be litigated. *Purser* v. *Corpus Christi State National Bank*, supra. Appellee seeks shelter under the precepts of *Worthen Bank and Trust Co.* v. *Mosser*, 245 Ark. 165, 432 S.W. 2d 8. But its supporting evidence has not brought it under that cover.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.